613 So.2d 1117 (1993)
Kevin HEALY
v.
NATIONAL RAILROAD CORPORATION ("AMTRAK"), Louisiana Department of Transportation and Development, the Parish of Jefferson, and Louisiana Gas Service Company.
No. 92-CA-728.
Court of Appeal of Louisiana, Fifth Circuit.
February 10, 1993.
Writ Denied April 23, 1993.
*1118 Lowe, Stein, Hoffman, Alweiss & Hauver, Michael R. Alweiss and Max J. Cohen, New Orleans, for plaintiff-appellant, Kevin Healy.
Borrello, Huber & Dubuclet, Kathleen W. Will, Metairie, for intervenor-appellant, Liberty Mut. Ins. Co.
Lemle & Kelleher, David S. Kelly, Randall A. Fish and Bryan C. Misshore, New Orleans, for defendant-appellee, Illinois Cent. R. Co.
Ansardi, Maxwell & Power, Michael J. Power, Dorothy A. Pendergast and J. Casey Fos, Kenner, for defendant-appellee, State of Louisiana.
Before KLIEBERT, C.J., and BOWES and DUFRESNE, JJ.
KLIEBERT, Chief Judge.
Plaintiff-appellant, Kevin Healy, appeals a district court judgment holding him solely responsible for the personal injuries he sustained when a passenger train collided into the side of the van he was driving at a railroad crossing in Jefferson Parish.
Mr. Healy's petition alleged (1) the collision resulted from the negligence of defendant-appellee, National Railroad Corporation (Amtrak) as the operator of the passenger train and (2) from the negligence of defendants-appellees, Illinois Central Railroad Company, the Louisiana Department of Transportation and Development (DOTD), and the Parish of Jefferson in failing to install adequate traffic control devices at the railroad crossing. The claims against Amtrak and Illinois Central were tried before a jury, and the claims against DOTD and the Parish of Jefferson were, as required by LSA-R.S. 13:5105, tried before the presiding district court judge. The trial court dismissed the Parish of Jefferson from the suit on a motion for involuntary dismissal and also dismissed Amtrak on a motion for directed verdict. The jury found that Illinois Central was not negligent, and the judge found no negligence on the part of DOTD. Judgment was therefore entered dismissing plaintiff's suit against all defendants, with prejudice.
Mr. Healy limits his appeal to challenging the findings of no negligence on the part of Illinois Central and DOTD. Since neither finding is manifestly erroneous, we affirm.
At the site, Little Farms Avenue, a two-lane street running north and south, crosses Illinois Central's railroad, consisting of a two-track system and a single-track system, which run east and west. Ivy Street runs parallel with the railroad at that location and is immediately adjacent to the single-track system on which the collision occurred. Little Farms Avenue and Ivy Street intersect immediately before the railroad crossing. A stop sign controls traffic turning from Ivy Street onto Little Farms Avenue. Flashing signal lights for each track system are installed at the railroad crossing to warn motorists of approaching trains. From the north edge of the Little Farms Avenue intersection to the single-track system where the accident occurred is approximately 72 feet, measured from the edge of Ivy Street along Little Farms Avenue to the single track system.
The accident occurred shortly after 5:00 P.M. on April 11, 1988. Plaintiff Kevin Healy was driving west along Ivy Street in a work van provided by his employer. When he reached Little Farms Avenue, Mr. Healy stopped in obeyance of the stop sign at that intersection. Mr. James Sewell, an acquaintance of the plaintiff, was standing near the intersection. According to Mr. Sewell, the plaintiff looked to the left, looked to the right, waved to Mr. Sewell *1119 and then turned left onto Little Farms Avenue and drove up the approach ramp to the railroad crossing without stopping. When Mr. Healy reached the first set of rails on the crossing, an Amtrak train travelling in a westerly direction toward the crossing struck the side of the van. The train had been sounding its whistle as it headed toward the crossing, and the signal lights at the crossing had been flashing to alert motorists to stop for the oncoming train. The locomotive engineer testified that he applied the train's emergency braking system immediately upon sensing that Mr. Healy was not going to stop at the crossing, but that the train was traveling at about 52 miles per hour at the time of impact. The train pushed the van several hundred feet along the track before coming to rest. Mr. Healy sustained multiple injuries in the collision, the most serious of which was a closed head injury.
Although the plaintiff testified at trial, he had no recollection of the collision events. The only other witnesses who actually observed the collision and the events leading up to it were James Sewell and Charles Wilkenson, the locomotive engineer.[1]
Mr. Sewell testified that, shortly before the collision, he was leaving his auto repair shop at the corner of Ivy Street and Little Farms Avenue when he saw the plaintiff driving along Ivy Street toward Little Farms Avenue. The business for which plaintiff worked had its offices on Little Farms Avenue, across the street from Mr. Sewell's workshop. Mr. Sewell was well acquainted with the plaintiff and was familiar with the business van plaintiff was driving, having worked on that vehicle in the past. While plaintiff's van was halted on Ivy Street at the intersection stop sign, Mr. Sewell observed the plaintiff glance to the left toward the railroad crossing, glance to the right in the other direction down Little Farms Avenue, and then wave at Mr. Sewell who returned the gesture. Mr. Sewell testified that, as he was standing on the corner, he could see the approaching train and could hear the train's whistle being sounded. At trial he could not recall whether the warning lights at the crossing were flashing prior to or at the time of the collision. However, other trial testimony established that the warning lights were flashing.[2] Mr. Sewell saw the plaintiff turn left onto Little Farms Avenue and continue driving toward the railroad crossing. He believed that the plaintiff was going to stop his van on the approach ramp to the railroad crossing and wait there for the train to clear the crossing, since the approach provided ample space for the plaintiff to stop his van a safe distance from the railroad crossing. However, the plaintiff continued driving onto the crossing, and the oncoming train ran squarely into the left side of the van.
Charles Wilkenson was the engineer aboard the train when the collision occurred. He was the regularly assigned engineer for this portion of the Amtrak train's route and was very familiar with the area, including the Little Farms crossing. He controlled the locomotive from the engineer's seat located on the right side of the cab, thus giving him excellent observation of Ivy Street as the train moved along the railroad track parallel to that street. Mr. Wilkenson testified that the Amtrak train departed the New Orleans Union Passenger Terminal shortly before 5:00 P.M. on *1120 April 11, 1988, and proceeded westbound along this section of the train's route. He reduced the train's speed to 40 miles per hour while travelling through May's Yard, a railroad facility approximately two miles away from the Little Farms crossing. After completing the movement through May's Yard, Mr. Wilkenson began accelerating the train to 60 miles per hour, the speed limit established for trains after exiting May's Yard. Mr. Wilkenson testified that he began sounding the train's whistle before reaching the whistle post for the Little Farms crossing. A whistle post is a sign installed along a railway to alert engineers to start sounding train whistles to warn vehicle traffic at an upcoming railroad crossing. Mr. Wilkenson stated that he began whistle procedures some 300 yards away from the Little Farms crossing and continued sounding the train's whistle up until the very instant of the collision.
Mr. Wilkenson first observed the plaintiff's van as it was moving along Ivy Street in the same direction but ahead of the train. He saw the van halt at the Ivy Street stop sign and then turn left onto Little Farms Avenue and head up the approach to the railroad crossing. When the van appeared to be accelerating rather than stopping, Mr. Wilkenson realized that the van could not safely negotiate the crossing and he immediately activated the train's emergency braking system which applied maximum brake power throughout the entire train and dispensed sand on the railroad tracks to promote increased friction. The engineer estimated that he applied the emergency brakes 25 feet from the point of the train's impact with the van, while the train was moving at a speed of 52 miles per hour. The entire train, consisting of two locomotives and ten coach cars, travelled through the railroad crossing before coming to a rest. As the train approached the Little Farms crossing, Mr. Wilkenson could see that the flashing lights at the crossing were operating. Immediately after the collision, Mr. Wilkenson reported the incident by radio and then walked back to the railroad crossing where he observed that the flashing lights were still in operation.
On appeal the plaintiff no longer urges negligence in the operation of the train. Rather, he urges in solido liability on the part of the Illinois Central Railroad, the owner of the tracks, and the DOTD because the warning system at the Little Farms crossing should have included additional traffic control devices, i.e., gates, to protect motorists from collision with oncoming trains. The plaintiff contends that Illinois Central Railroad and the DOTD, under the provision of LA-C.C. Article 2315, share responsibility for installing adequate traffic control devices at the crossing and that their failure to properly perform that joint duty renders them liable for plaintiff's damages. Since allegations of negligent operation of the train are not pursued on appeal, the issue presented to this Court for review narrows down to whether the traffic control devices at the railroad crossing when the collision occurred were adequate.
To prevail on a negligence claim under La.-C.C. Article 2315, the plaintiff must prove five elements:
1. The defendant had a duty to conform his conduct to a specific standard.
2. The defendant failed to conform his conduct to the appropriate standard.
3. The defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries.
4. The defendant's substandard conduct was a legal cause of the plaintiff's injuries.
5. The plaintiff sustained actual damages. Roberts v. Benoit, 605 So.2d 1032 (La.1992).
Illinois Central's duties regarding this railroad crossing are defined by La.-R.S. 32:168 and include operating the crossing such that it can be safety traversed by motorists using reasonable care. The testimony at trial established that engineering and facilities personnel from Illinois Central and from DOTD worked jointly with respect to the inspection of this crossing and the evaluation of the effectiveness of the warning signals at the crossing.
Little Farms Avenue is part of the state highway system designated by LA-R.S. *1121 48:191; and the State of Louisiana, through the Department of Transportation and Development, has the duty to install necessary traffic control devices along that roadway, including the railroad crossing. LA-R.S. 32:235 A. DOTD, as the entity with the ultimate responsibility for installation of warning signals, found no need to install additional traffic control devices at the Little Farms crossing.
The plaintiff, as a motorist driving over this railroad crossing, also had a responsibility, which is defined by LA-R.S. 32:171 A:
"Whenever any person driving a motor vehicle approaches a railroad grade crossing under any of the circumstances stated in this Section, the driver of such vehicle shall stop within fifty feet but not less than fifteen feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:
(1) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train.
(2) A crossing gate is lowered or when a human flagman gives or continues to give a signal of the approach or passage of a railroad train.
(3) A railroad train approaching within approximately nine hundred feet of the highway crossing emits a signal in accordance with R.S. 32:168, and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard.
(4) An approaching railroad train is plainly visible and is in hazardous proximity to such crossing."
William Berg, an engineer, testified on plaintiff's behalf as an expert in the field of railroad crossing safety. Based on his analysis of the Little Farms crossing and its traffic patterns for trains and automobiles, Mr. Berg concluded that the crossing was hazardous, and he expressed the opinion that additional warning devices should have been installed at the crossing. Specifically, Mr. Berg suggested the installation of automatic gates which would lower in front of the crossing to prevent motorists from entering into the path of oncoming trains. He further suggested the need for an additional set of flashing lights, known as sidelights, to be directed at traffic turning onto Little Farms Avenue from Ivy Street. Finally, Mr. Berg expressed his opinion that the warning devices at the Little Farms crossing should be controlled by circuiting known as a constant time train detection system which activates the warning devices at a fixed time before a train arrives at the crossing, regardless of the train's speed. The circuiting at the crossing when this collision occurred was a fixed distance system which activated the warning devices when a train reached an established point 2,017 feet from the crossing. As support for his opinions, Mr. Berg referred to certain publications considered authoritative in the area of railroad/highway engineering, including the "Manual on Uniform Traffic Control Devices" upon which DOTD relies to meet the requirements imposed by LA-R.S. 32:235 A:
"The [Louisiana Department of Transportation and Development] shall adopt manuals and specifications for a uniform system of traffic control devices consistent with the provisions of this Chapter for use upon highways within this state. Such uniform systems shall correlate with and so far as possible conform to the system then current as approved by the United States Department of Transportation, Federal Highway Administration....."
Section 1A-1 of the "Manual on Uniform Traffic Control Devices" lists five basic characteristics of an effective traffic control device. To be effective, a traffic control device should (1) fulfill a need; (2) command attention; (3) convey a clear, simple meaning; (4) command respect of road users; and, (5) give adequate time for proper response.
At trial, the plaintiff and defendants, Illinois Central and DOTD, disagreed about whether the warning devices at the Little Farms crossing were adequate. After hearing all of the evidence, the jury deliberated and returned a verdict exonerating Illinois Central of any negligence in connection with the collision. The trial judge, *1122 after considering the same evidence, concluded that the plaintiff also failed to prove his negligence claim against DOTD. He found that the cause-in-fact of the accident was the plaintiff's inattentiveness and specified the grounds for that finding in the written reasons for judgment:
"The State of Louisiana has a duty to maintain the railroad crossing in a reasonably safe condition. The state is liable if the crossing was unsafe or created a hazardous condition which was a proximate cause of the plaintiff's injuries. Stated another way, the issue in this case is whether the crossing was maintained in a reasonably safe condition for persons exercising ordinary care and prudence.
This particular railroad crossing could be safely traversed by motorist (sic) using ordinary and reasonable care.
The state works in conjunction with the railroad to upgrade crossings. The state's position is that this crossing was adequately maintainedthat the crossing was not perfect but was adequate under the circumstances. I agree.
* * * * * *
Mr. Mike Morgan is the agreements engineer for the State of Louisiana. He testified at trial as to the factors considered in upgrading a railroad crossing. He testified that there is no single factor which dictates an upgrading of a crossing. He said the state looks at the rating index, accident history and other factors. There were no requests to update Little Farms crossing before this accident.
Considering all the evidence, it is this court's view that the crossing was adequate to protect the motoring public. Unfortunately, Mr. Healy's negligence was the cause of this accident. He turned left in front of an oncoming locomotive. I agree with the jury's finding of no responsibility on the part of the railroad and can find no legal fault on the part of the state."
The parties agree that the manifest error-clearly wrong standard, as articulated by the Louisiana Supreme Court in Rosell v. ESCO, 549 So.2d 840 (LA-1989), applies to our review of the findings that neither Illinois Central nor DOTD was negligent in this case by the jury and the trial judge respectively.
The standard articulated in Rosell at page 844 was:
"It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of `manifest error' or unless it is `clearly wrong,' and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable."
Based on our review of the record, we likewise conclude that the plaintiff did not meet the burden of proving his negligence claims against Illinois Central and DOTD. The cause-in-fact of this accident was the plaintiff's inattentiveness in failing to see the oncoming train or the signals at the crossing which warned of the train's approach. As plaintiff turned left onto Little Farms Avenue from Ivy Street, he undoubtedly came into full view of the flashing lights at the crossing, but nevertheless continued driving onto the crossing. The crossing's approach ramp, which was approximately 72 feet in length, afforded the plaintiff ample space to stop before reaching the crossing. Despite the warning signals, however, the plaintiff failed to stop at the crossing and check for oncoming trains.
Moreover, we find no reason to upset the factual determinations of the jury or the presiding judge. The jury accepted Illinois Central's view of the evidence rather than the plaintiff's view; and the trial judge similarly found in favor of DOTD. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, supra; Bruno v. Harbert Intern, Inc., 593 So.2d 357 (La. 1992). The findings of the jury and the trial judge, respectively, that defendants Illinois Central and DOTD lacked negligence in this case were neither manifestly *1123 erroneous nor clearly wrong. We therefore affirm the trial court judgment. Because of the affirmance, we need not discuss the plaintiff-appellant's remaining assignments of error concerning allocation of fault, comparative negligence and damages.
For the foregoing reasons, we affirm the trial court's judgment. Costs are to be borne by the plaintiff-appellant.
AFFIRMED.
NOTES
[1] Ms. Kari Carman testified by deposition that she observed the collision while sitting in her car on the side of the Little Farms crossing opposite the direction from which plaintiff was driving. She was waiting for the Amtrak train to pass. Ms. Carman did not observe any of the events leading up to the collision.
[2] Mr. Rodney Herrington testified that he was driving north on Little Farms Avenue immediately before the collision occurred. As he approached the railroad crossing, he saw the warning lights to his front flashing. After he drove over the crossing, he observed the plaintiff's van stopped at Ivy Street. Looking into his rearview mirror, Mr. Herrington could see that the warning lights facing the side of the crossing from which he was driving were also flashing. Again looking into his rearview mirror, Mr. Herrington observed the plaintiff's van turn left onto Little Farms Avenue, drive up to the crossing, and the Amtrak passenger train collide into the side of the plaintiff's van. He then turned his automobile around and drove back to the collision site to render assistance.